People v Lambert (2026 NY Slip Op 50259(U))

[*1]

People v Lambert

2026 NY Slip Op 50259(U)

Decided on March 5, 2026

Supreme Court, Bronx County

Bowen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 5, 2026

Supreme Court, Bronx County

The People of the State of New York

against

Gilbert Lambert, Defendant.

Ind. No. 070493-25

Matthew Christ, Assistant District Attorney, Bronx County, for the People

Grace Powell, The Bronx Defenders, for Defendant

E. Deronn Bowen, J.

Summary

1. HOLDING: The misuse, abuse, or weaponization of CPL article 245, as well as the failure to adhere to its legislative intent or to act in good faith, constitutes a violation of the duty of reasonableness that governs every aspect of discovery practice.

2. HOLDING: Noncompliance with an unreasonable or bad-faith demand for discovery does not constitute grounds to invalidate a certificate of compliance (CoC).

3. The defense application to deem invalid the CoC dated August 13, 2025, is DENIED, and the CoC is DEEMED VALID.

4. The defense application to deem illusory the statement of readiness (SoR) dated August 13, 2025, is DENIED.

5. The court, on its own motion, DEEMS VALID the supplemental CoC and SoR, both dated November 24, 2025.

6. As defense sanction and prosecution remedy respecting discovery practice in this matter, the adjournment periods for discovery compliance and conferencing, as delineated in this decision and order, are DEEMED EXCLUDED TIME for [*2]statutory speedy trial purposes.

If you permit them to shenan once, they will shenanigan.

— A wise philosopher somewhere, sometime

I. Introduction and Overview

"The modern discovery statute was enacted to promote fairness and efficiency in plea negotiations; in hearing and trial preparation; and in advising clients by providing the defense with information relevant to these purposes earlier in the proceedings" (People v McGriff, 88 Misc 3d 1216(A), 2026 NY Slip Op 50109[U], *7 [Sup Ct, Bronx County 2026]). It has never been the intent of the Legislature that CPL article 245 be weaponized as a means of litigation by annoyance and frustration. Here, irrespective of intent, the defense employed the discovery statute in this impermissible manner. In light of this, and after a holistic review of the prosecution's conduct during discovery practice, the defense motion to invalidate the certificate of compliance (CoC) is DENIED. The CoC is DEEMED VALID, as is the accompanying statement of readiness (SoR). The court, on its own motion, also DEEMS VALID the People's supplemental CoC (SCoC) and the accompanying SoR. As defense sanction and prosecution remedy respecting the discovery process as it unfolded here, the adjournment periods for discovery conferencing and prosecutorial compliance, spanning June 24 — October 6, 2025, are DEEMED to be EXCLUDED TIME for statutory speedy trial purposes.

II. CPL Article 245 and the Duty of Reasonableness

"Prior to 2020 [the year that the modern CPL article 245 discovery statute went into effect], discovery procedures were cumbersome, outdated, and inefficient, resulting in defendants being blindsided by late disclosure of important evidence on the eve of trial. The old restrictive rules also inhibited, at great taxpayer cost, defendants' ability to reach reasonable pre-trial dispositions of their cases precisely because they lacked sufficient early access to the evidence against them.

The purpose of and justification for article 245 was specifically to eliminate trial by ambush and to remedy the above inequities by mandating earlier and broader discovery obligations by the prosecution, increasing efficiency in prosecutions and fairness to both sides. CPL article 245 seeks to ensure that defendants and their attorneys can intelligently investigate, secure and use any potentially exculpatory evidence, fairly weigh a guilty plea offer, or develop an appropriate trial strategy" (People v Godfred, 77 Misc 3d 1119, 1123-1124 [Crim Ct, Bronx County 2022] [internal citations and quotation marks omitted]; see People v Bay, 41 NY3d 200, 208 [2023] ["Requiring early and broader disclosure, the Task Force [on Criminal Discovery] concluded, would facilitate expeditious resolution of cases and better enable defense counsel to investigate and prepare for trial"]; People v DeMilio, 66 Misc 3d 759, 762 [Dutchess County Ct 2020] ["The legislative history to Article 245 pounds a steady beat: that broad pretrial discovery is essential to a fair and just criminal justice system; that the discovery afforded by the former Article 240 was unduly restrictive; and that the comprehensive discovery provided by Article 245 will promote better and more efficient outcomes"]).

The central prerequisite to a finding of prosecutorial discovery compliance is to "exercise[ ] due diligence and act[ ] in good faith in making reasonable inquiries and efforts to obtain and provide the discovery required" (CPL 245.50 [1]). The statutory mandate plainly [*3]covers discoverable material that is "under the prosecution's direction or control" (CPL 245.20 [1]). Additionally, prosecutors must make a "diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one of this section and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control" (CPL 245.50 [2]). Subsection (2) expressly references the prosecutorial discovery obligation "under" subsection (1); read together, these provisions establish a unified standard. The "diligent good faith effort" mandated in subsection (2) is satisfied by the "exercise of" the same prosecutorial "due diligence and . . . good faith in making reasonable inquiries and efforts" described in subsection (1). "Reasonableness, then, is the touchstone—a concept confirmed by the statutory directive to make 'reasonable inquiries' " (Bay, 41 NY3d at 211-212, quoting CPL 245.50 [1]).

The Court of Appeals' recognition in Bay of reasonableness as "the touchstone" of discovery compliance analysis is of particular import. CPL article 245 was enacted to make criminal litigation fairer to defendants, not to create new unfairnesses or to encourage discovery practices divorced from the legislative intent behind the statute's enactment (see People v Schneider, 37 NY3d 187, 196 [2021] ["When resolving a question of statutory interpretation, the primary consideration is to ascertain and give effect to the legislature's intent"]; People v Smith, 79 Misc 3d 649, 654 [Sup Ct, Queens County 2023] ["In enacting the new discovery statute, the Legislature did not intend to promote gamesmanship, but rather to ensure the free flow of information from the police to the prosecutor and ultimately to the defendant"]). Consequently, the "discovery statute's interlocking provisions place clear duties upon both parties to approach discovery disputes with mutual good-faith, accommodation, reasonableness and 'due diligence,' which is 'a familiar and flexible standard that requires the [parties] to make reasonable efforts to comply with statutory directives' " (People v McCray, 83 Misc 3d 1220[A], 2024 NY Slip Op 50760[U], *8 [Crim Ct, Bronx County 2024] [emphasis in the original], quoting Bay, 41 NY3d at 211).

The touchstone duty of reasonableness governs both parties at every stage of CPL article 245 discovery practice, including procuring and sharing material; making and responding to discovery demands; conferencing; and motion practice. A prosecutor's failure to exercise due diligence and good faith in making reasonable inquiries and efforts to provide discoverable material, or to respond to reasonable defense requests and complaints, constitutes a discovery violation. So, too, do unreasonable defense demands and frivolous or near-frivolous complaints under the auspices of CPL article 245 constitute a discovery violation.

Importantly, reliance upon a claim of subjective good faith does not excuse conduct during discovery practice that is objectively unreasonable or insufficiently diligent (see Bay, 41 NY3d at 212 ["the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence"]; People v Loja, 86 Misc 3d 318, 332 [Crim Ct, Bronx County 2025] ["In deference to the legislative intent undergirding CPL article 245, the court may not stand idly by if the rules of discovery compliance are being contorted—intentionally or not—into a game of gotcha"]). The intentional abuse or weaponization by either party of a CPL article 245 provision violates the statutory duty of good faith. The good-faith, but nevertheless unreasonable, misuse or ignorance by either party of a CPL article 245 provision violates the statutory duty of due diligence. Accordingly, and irrespective of intent, the court HOLDS that the misuse, abuse, or weaponization of CPL article 245, as well as the failure to adhere to its legislative intent or to act in good faith, constitutes a [*4]violation of the duty of reasonableness that governs every aspect of discovery practice (including procuring and sharing material; making and responding to discovery demands; conferencing; and motion practice).[FN1]
Such an act or failure by either party violates an "order imposed or issued pursuant to this article," thereby subjecting it to a potential sanction or remedy (CPL 245.80 [2]).[FN2]

CPL article 245 includes codified safeguards that, if heeded diligently and in good faith, ensure the statute's reasonable use (see e.g. CPL 245.10, 245.50, 245.80). One such safeguard is attorney self-monitoring. Attorneys must address discovery disagreements "diligently" and make a good faith "attempt to reach an accommodation as to any dispute concerning discovery prior to seeking a ruling from the court" (CPL 245.35 [1]). This provision reflects a legislative viewpoint that the best mechanism for resolving discovery disputes is through private dialogue and proportional compromise, and that this should be the overwhelmingly predominant practice. The court agrees since,

"having adjudicated CPL 245.35 (2) conferences over discovery disputes ranging from the extremely serious to the pettily frivolous, [the court] finds it is hard to imagine many circumstances in which absolutely no accommodation can be reached whatsoever over discovery disputes if both parties approach CPL 245.35 (1) conferencing in good faith and with due diligence" (McCray, 2024 NY Slip Op 50760[U], *2 n 4 [internal quotation marks omitted]).

On the other hand, in what should be the rare instances that agreement cannot be reached during private CPL 245.35 (1) conferencing (see id. at *2), then the parties' respective demonstrable good-faith compliance with statutory accommodation expectations (or not) is germane to the court's later analysis of an application for CoC invalidation or discovery sanctions. It is understandable if, at the outset of the discovery phase, the defense was to demand much, if not all, of the panoply of "[a]utomatic discovery" that constitutes "[i]nitial discovery for the defendant" (CPL 245.20 [1]). During private, good-faith conferencing between the parties, as particular demands reveal themselves to be lacking in relevance or materiality, or serving primarily to annoy and frustrate by imposing disproportionate burdens relative to their demonstrable utility in the case, then pursuant to the duty of reasonableness the defense should make accommodations reflective of that reality. The more speculative the practical value of disputed material, particularly when balanced against the time and effort needed to "cause such material or information to be made available for discovery" (CPL 245.20 [2]), then the more proportionate the defense accommodation should be (see CPL 245.50 [5] [a] ["Relevant factors for assessing the prosecutor's due diligence include . . . whether the belated discovery was substantively duplicative, insignificant, or easily remedied"]).

The requirement that prosecutors "mak[e] reasonable inquiries and efforts" (CPL 245.50 [*5][1]) means not only that prosecution inquiries and efforts over discovery must be reasonably made, but also that prosecution inquiries and efforts may be demanded only respecting reasonable discovery purposes and objectives. Consequently, a defense discovery demand must be reasonable in purpose and scope, and must conform to the intent of the legislature. An initial discovery demand that—through self-monitoring, conferencing or other means of clarification—is revealed as not being objectively grounded in reasonable needs relevant to plea negotiations, to hearing or trial preparation, or to advising a defendant should be narrowed, modified or withdrawn. Certainly, a defense discovery demand that is later determined to be objectively unreasonable should not factor into a motion seeking CoC invalidation since CPL article 245 was not enacted to support discovery practices that, regardless of intent, operate primarily to generate needless delay, a disproportionate work burden, or collateral litigation. Accordingly, the court HOLDS that prosecutorial noncompliance with an unreasonable or bad-faith discovery demand does not constitute grounds for a finding of discovery noncompliance.[FN3]

Prosecutorial due diligence and good faith cannot be examined in a vacuum, but rather against the reasonableness of the demands delineated in the motion that triggers the discovery compliance examination (see CPL 245.50 [4] [a]). However, the presence of an overbroad or unsupported request will not automatically extinguish a claim of discovery noncompliance. Instead, as with the prosecution, an analysis of defense reasonableness and due diligence "calls for a holistic assessment of [ ] [defense] efforts to comply with the [ ] discovery provisions, rather than a strict item-by-item test that would require us to conclude that [a CoC-invalidation application] is improper if [unreasonableness is found respecting] even one item" (People v Cooperman, 225 AD3d 1216, 1220 [4th Dept 2024]).

The parties certainly should utilize the discovery statute for its legislatively intended purposes respecting plea negotiations, hearing and trial preparation, and advising clients. However, "an attorney's duty to zealously represent a client is circumscribed by an 'equally solemn duty to comply with the law and standards of professional conduct' " (People v DePallo, 96 NY2d 437, 441 [2001], quoting Nix v Whiteside, 475 US 157, 168 [1986]). Thus, reasonableness operates as both a legal and an ethical duty that informs every aspect of discovery practice by both parties, including procuring and sharing material; making and responding to discovery demands; conferencing; and motion practice.[FN4]
Throughout the discovery phase, both parties are obligated to diligently self-monitor that their own interpretation and utilization of the various interlocking provisions of the discovery statute are objectively reasonable and are done in good faith (see Rules of Prof Conduct [22 NYCRR 1200.0] rule 1.3 ["A lawyer shall act with reasonable diligence"]; rule 3.2 ["a lawyer shall not use means that have no substantial purpose other than to delay or prolong the proceeding or to cause needless [*6]expense"]; Schneider, 37 NY3d at 196 ["when the language at issue is a component part of a larger statutory scheme, the language must be analyzed in context and the related provisions must be harmonized and rendered compatible"]).[FN5]

Prosecutorial compliance is demonstrated by a showing holistic due diligence and good faith (see Bay, 41 NY3d at 213). Indeed, the discovery statute commands that "[n]o adverse consequence to the prosecution or the prosecutor shall result from the filing of a certificate of compliance in good faith and reasonable under the circumstances" (CPL 245.50 [1]). Similarly, the defense in asserting a discovery violation or oversight ought to be able to demonstrate the holistic reasonableness and good faith of the demands underlying the claim and why accommodation could not be made prior to bringing the issue to the court's attention (see CPL 245.35 [1]; 245.50 [5] [a]). Of course, the court's "analysis of whether the People [or the defense] made reasonable efforts [to comply with legislative intent] sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented" (Bay, 41 NY3d at 212).

III. The Instant Matter

A. Factual and Procedural Background

The underlying allegations here are summarized as follows. On the evening of November 30, 2024, a stranger followed the complainant from a Bronx County subway station into a store and then chased her into the lobby of an apartment building, where she fell. The stranger took the complainant's belongings—including groceries, credit cards and cash—touched her buttocks and fled. Video surveillance cameras captured much of the interaction. A still photograph of the stranger extracted from the footage was entered into a computer system utilizing facial identification software (FIS). The system identified a photograph of defendant, Gilbert Lambert, as a potential match. The complainant subsequently identified defendant from a six-person photo array, leading to his arrest on January 6, 2025, and later indictment on charges of robbery in the second degree (Penal Law § 160.10 [2] [a]), burglary in the second degree (Penal Law § 140.25 [2]), forcible touching (Penal Law § 130.52 [1]) and other related charges.

Defendant was arraigned on the indictment in Supreme Court on February 13, 2025. Separate CPL 190.50 and omnibus motion practices followed, resulting in the issuance of written decisions on, respectively, April 29 and June 24, 2025 (Laurence Busching, J.). During the discovery phase that followed, the prosecutor served and filed a CoC and an SoR on August 13, [*7]2025. The parties thereafter engaged in private discovery conferencing (see CPL 245.35 [1]), during which time the defense, on September 2, 2025, shared with the People a 25-point list of outstanding purported discovery (see CPL 245.50 [4] [b], [c]). Also during this period, a defense request for an enlargement of time to contest the validity of the People's CoC to October 6, 2025, was granted (Laurence Busching, J.) (see CPL 245.50 [4] [c] [i]).

Around the time that this case was administratively transferred to the instant court for continued pretrial proceedings, defendant served and filed a "supplemental omnibus motion" dated October 6, 2025. In one branch, defendant moves to reargue points in the initial omnibus motion. In a separate branch, defendant moves to invalidate the People's CoC and to deem illusory the contemporaneous SoR. By oral order the reargument branch was severed to be addressed by the court that issued the omnibus decision. The instant court has retained the CoC-invalidation/SoR-illusoriness application as a stand-alone motion.

Defendant submits in the timely filed motion that,

"despite [ ] repeated requests from defense counsel, the following items of discovery remain outstanding:

ITEM

DISCOVERABLE   PURSUANT TO:

Radio Runs from 12.22.24 (full length - those disclosed do not match the ICAD)

C.P.L. § 245.20 (1) (g)

Contact information for civilian witnesses (MTA conductor and operator)

C.P.L. § 245.20 (1) (c)

Discovery associated with the investigation and/or arrest of [a separate, named individual]

C.P.L. § 245.20 (1) (k)

Body-worn camera footage recorded by [one named NYPD police officer]

C.P.L. § 245.20 (1) (g)

Memobooks [sic] for [one named NYPD police officer and two named NYPD detectives] (in addition to the memobooks identified as outstanding by the prosecution in its certificate of compliance)

C.P.L. § 245.20 (1) (e)

Any DD5s or other notes completed by [one named NYPD detective] in reference to this investigation

C.P.L. § 245.20 (1) (e)

Chain of Custody Paperwork

C.P.L. § 245.20 (1) (e)

[*8]NYPD social media posts

C.P.L. § 245.20 (1) (e)

Complete FIS files

C.P.L. § 245.20 (1) (e)

Underlying Giglio Material, including: [seven IAB log identification numbers]

C.P.L. § 245.20 (1) (k)

All DD5s, notes and associated attachments taken in conjunction with the investigation and arrest of [defendant] by the Bronx Warrant Squad

C.P.L. § 245.20 (1) (e)

DD5s and/or notes associated with NYPD arranged identification procedure conducted on 12.05.24

C.P.L. § 245.20 (1) (e)

Any body-worn camera footage of NYPD canvass from 2742 East Tremont Avenue; and any body-worn camera footage of follow-up interview conducted with complaining witness on 12.4.24 (referenced in DD5 Tracking No. 98699091)

C.P.L. § 245.20 (1) (g)

" (emphasis in the original).

The above is a subset of outstanding, still-contested material from defendant's September 2, 2025, email. Defendant effectively contends that the list presented in the motion constitutes a body of discoverable material over which (at the time of the motion's filing on October 6, 2025) the prosecution had failed to exercise due diligence or good faith, such that the August 13, 2025, certification of discovery compliance must be invalidated and the accompanying statement of readiness deemed illusory. Since the filing of the defense motion, the People have shared additional material. In the SCoC dated November 24, 2025, the People asserted that some of the shared material is "not discoverable" but nonetheless was "obtained and shared . . . under a presumption of openness." The parties have engaged in off-calendar discovery conferencing with the Part 17 court attorney and on January 6, 2026, conferred on the record before the court (see CPL 245.35 [2]).

Prior to assessing the People's discovery compliance here, the court has reviewed the parties' cross-filings, a transcript of the January 6, 2026, conference, and the relevant statutes and case law. The court also has given due consideration to, among other factors, "whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed" ; "whether the belated discovery was substantively duplicative, insignificant, or easily remedied" ; and "whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL 245.50 [5] [a]), as well as, of course, the holistic reasonableness of the defense demands [*9]delineated in the motion triggering this examination.

B. Discovery Compliance Analysis

1. Sample Issue: The Facial Identification Software (FIS) File

One significant point of dispute has been the defense demand for materials related to the FIS database search that generated defendant's photograph from the surveillance still image of the stranger. During the discovery phase, in an October 2, 2025, email to the prosecutor, counsel acknowledged the receipt of a partial FIS file but explained that its contents were inadequate to meet defense standards. Counsel then articulated the multi-categorical nature of the singular FIS file request, thereby expanding the request well beyond the materials previously disclosed.

"[I]n case it's helpful, I wanted to provide some additional detail on what appears to be missing from the FIS file given that you indicated you believe everything has been provided:

- Candidate lists/investigative lead reports, including all candidate images, confidence scores, rankings, and metadata.

- Entity-Extended Reports, PIMS printouts, or NYPD FIS investigative lead reports.

- FIS Image Rejection Reports.

- All FIS Possible Match Reports.

- FIS No Match Reports.

- Chain-of-custody or handling logs for the probe image(s) and candidate list.

- Any additional communications between HIDTA analysts, NYPD FIS analysts, prosecutors, or other law enforcement concerning the search or results.

- Name, badge/ID, and position of each HIDTA or NYPD analyst or officer who conducted the search, generated or reviewed the candidate list, made human judgments about possible matches, or altered or approved alteration of the probe photo.

- Each analyst's training records, certifications, and proficiency testing in facial recognition.

- Records of annual re-training, continuing education, or certification renewal.

- Proficiency test results, scores, or evaluations, including blind proficiency testing and error rate data.

- Disciplinary findings, complaints, or investigations relating to HIDTA or NYPD analysts' conduct or compliance.

- Performance audits, peer reviews, or supervisory evaluations of analysts' work.

- Documents reflecting limitations, inaccuracies, or failures of HIDTA or NYPD systems, including false positive or false negative reports, wrongful arrests or misidentifications, and internal acknowledgments of error rates, weaknesses, or demographic bias.

Again, let me know if you have follow-up questions on these or any other of my discovery objections."

During the conference on January 6, 2026, the court inquired into the reasonableness of the sub-demand for so much material under the "FIS file" point.

"THE COURT: So, assume it's [the FIS file] discoverable. Why should I not deny, restrict, modify that discoverability . . . under 245.70 (1)? What's the importance of the FIS files for the defense here?

[DEFENSE COUNSEL]: So, here, it is the basis for the NYPD's probable cause determination, and it bears directly on suggestiveness of the Wade procedure that led to [*10][defendant's] arrest.

. . . .

[THE COURT]: So, name me something from the FIS file that you believe you're entitled to.

[DEFENSE COUNSEL]: So, one of the things would be the confidence scores. So, our understanding of this software is that when it produces a potential match to an individual, that there is a confidence score associated with each potential match, that the software indicates, essentially, to the analyst this is how strong we think the match is. So, that's one of the things that I'm requesting, the confidence scores.

. . . .

. . . .

So, I think that the proficiency of the software—so we're asking for the error rates of the software that the NYPD is using, the confidence scores. . . .

[THE COURT]: And, what basis do you have to believe that there are some errors or things of that nature that should make the People have to go digging for all of this stuff?

. . . .

[DEFENSE COUNSEL]: So, I think that, essentially, a crucial issue for the incident that allegedly occurred on November 30 would be identification, and my understanding is that the match was with a photograph that was altered by the NYPD. So, the NYPD, essentially, altered a photograph from surveillance footage, ran it through their system—

[THE COURT]: Altered in what way?

[DEFENSE COUNSEL]: I don't know that. That's information that I am requesting.

. . . .

The original image wasn't a photograph; it's a screen-grab from a surveillance video. So, usually, when—my understanding is that when these photographs are run through the NYPD system, there is a detective who is taking a screen-grab and, essentially, altering the image, so that it can be run through the FIS software, and that there have been incidents—. . . there have been instances where the alteration has led to incorrect matches.

. . . .

[ ] I do think that there is an issue here. The image that was fed in is of someone with their face to the side and the match is a dead-on photo from another arrest. And, so, I do think that there's potential issues with regard to whether this photo was altered to make it appear or make it more likely that there was a match between photo number one and photo number two.

I also do want to clarify, Judge, that I think that this issue is crucial for the Wade hearing, so I'm not necessarily addressing what the jury will see at this point. I really do think that this goes to the suggestibility of the identification procedure, and that is a crucial issue in this case.

[THE COURT]: But I assume when the identification procedure was going on, no one was showing FIS files and error rates to the person who was doing the identification.

[DEFENSE COUNSEL]: The image that was included in the [photo array] was generated by the FIS files, and there is research and case law to support the position that makes the identification procedure more suggestible and that it improperly impacts the ability of the complaining witness to accurately identify in the same way that an incorrect filler would [*11]have that same impact."

The prosecutor, who contends that the FIS database material is not discoverable, submitted during the conference that

"FIS is not the basis for probable cause. A match on FIS does not give the police probable cause to make an arrest. . . . It is not the basis of an arrest. It is used as an investigative tool. It's, essentially, a modern version of a mug book. It's a collection of photographs, which, in this case, a still from surveillance video was put into the system, and it pops out, basically, mugshots or other photographs that could be potential matches. One of that mugshot [sic] was then used in a [six-photo array], [from] which the complainant identified the defendant . . . .

. . . . The basis for the Wade hearing is the suggestibility that the complainant may have had when the procedure was conducted."

The court finds that the whole of the defense arguments—both in written filings and during discovery conferencing—in support of the demand for the cornucopia of FIS database material rests upon speculative, Frye-esque assumptions not supported by the record. The hodgepodge of material demanded—including "confidence scores, rankings, and metadata" ; "FIS Image Rejection Reports" ; "Records of annual re-training, continuing education, or certification renewal" ; and "failures of HIDTA or NYPD systems"—bear scant connection to the identification procedure conducted with the complainant and are, at best, substantially collateral thereto. The court sees no objective nonspeculative reason to believe that the delayed partial production of FIS-related material, or the absence of additional FIS material, has prejudiced the defense here in plea bargaining, hearing or trial preparation, or advising defendant. By contrast, the court finds from the record before it that the prosecutor exercised good faith and due diligence in addressing defense FIS file demands, including by obtaining and disclosing some material notwithstanding the plain unreasonableness of the facially overbroad demand.

The court makes no determination as to whether each of defendant's admitted "repeated requests" for the entire FIS file was advanced, without accommodation, with the specific intent, in part or whole, to annoy or frustrate the prosecution. What is pertinent and evident is that defendant either knew or should have known that the request for the entire FIS file was unreasonable, as was its inclusion in the instant CoC-invalidation motion. By the FIS file demand, if defendant intended primarily to annoy and frustrate the prosecutor, then it was not a good-faith use, but rather a bad-faith abuse, of the discovery statute. If the demand was made in good faith, then defendant was not reasonably diligent in self-monitoring this misuse of the discovery statute. In either case, by its discovery practice respecting this demand the defense unreasonably weaponized the discovery statute beyond its legislatively intended purpose.

2. Holistic Reasonable Use Analysis

Upon a "holistic review of the People's discovery compliance, it is possible for even a single discovery lapse to be so consequential as to require the invalidation of a CoC" (McGriff, 2026 NY Slip Op 50109[U], *6; see Loja, 86 Misc 3d at 333; People v Zweifach, 76 Misc 3d 1204[A], 2022 NY Slip Op 50823[U], *1-*2 [Crim Ct, Richmond County 2022]). So, too, upon a holistic review of a defendant's discovery compliance, could a singular misuse or abuse of the discovery statute be so egregious, regardless of intent, as to negative a discovery complaint. Here, the discovery practice surrounding the defense FIS file demand is such an example. It is, however, not the only unreasonable, or unreasonably unaccommodated, demand listed in the [*12]CoC-invalidation motion. Multiple of the demands could and should have been narrowed, modified or withdrawn "prior to seeking a ruling from the court" (CPL 245.35 [1]). Per the court's holding ante, these unreasonable and unnecessarily expansive demands do not constitute grounds upon which to deem the prosecution noncompliant with discovery obligations.

The court rejects the defense invitation to provide an item-by-item assessment of the reasonableness of each of the approximately dozen points listed in the motion. No reading of the discovery statute requires prosecutors or the courts to separate the grains of discovery wheat from demand chaff on behalf of the defense since, again, CPL article 245 was never legislatively intended to serve as a means for litigation by annoyance and frustration. Defense counsel is fully capable of self-monitoring during discovery practice so as to not run afoul of the statutory duty of reasonableness, and is expected to do so.

A misapprehension appears to have fueled the all-but-the-kitchen-sink approach to discovery demand and litigation here, namely, that, so long as an item may have any potential or theoretical relevance, no matter how insignificant or contrived, then the prosecution must exhaust all time and energy to make it available to the defense. The discovery statute was not meant to be wielded in this manner: combing through discovery with a legal microscope in search of any molecule-sized hole to then magnify into pretend significance (see McCray, NY Slip Op 50760[U], *5 ["The suggestion that the People lacked a CoC-invalidating degree of due diligence . . . has a distinct 'mountain out of a molehill' vibe to it"]).

Viewing the defense demands from a macro-case management perspective, the court cannot imagine any prosecutor objectively reasonably being able to invest the time and energy necessary to satisfy, on each and every assigned case, the volume and diversity of hyperspecific discovery demands that defendant imagines CPL article 245 to permit, as well as to conference over all individual disputes as statutorily required. To condone discovery practice as defendant envisions would be to condone the defense bar writ large "flooding the zone" with similarly overbroad and time-consuming discovery and conferencing demands. On the back end, a prosecutorial slip up of any type would invite the inevitable filing of CoC-invalidation motions to which prosecutors must then devote even more time drafting responsive filings defending their due diligence and good faith (see Bay, 41 NY3d at 213 ["Should a defendant bring a CPL 30.30 motion to dismiss on the ground that the People . . . improperly filed a COC, the People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure"]). Defendant's overbroad interpretation of prosecutorial discovery compliance is simply inconsistent with the more narrowly defined legislative intent underlying CPL article 245 (see Schneider, 37 NY3d at 196 [2021] ["we must interpret a statute so as to avoid an unreasonable or absurd application of the law"] [internal quotation marks omitted]).

"Defense counsel should most certainly leverage article 245 as designed, i.e., as a 'shield' meant to provide each criminal defendant with access to material that allows for more well-informed choices about and concerning the respective case than generally was possible under the predecessor CPL article 240. Article 245 is not intended for use as a 'sword', whereby assistant district attorneys are expected to run themselves ragged in at times futile or near-futile attempts to procure material in which defense counsel has no substantive interest beyond exhausting the People's statutory speedy trial time or hoping that the People, in frustration, opt to abandon the prosecution" (People v Barrios, 82 Misc 3d 606, 613 [Crim Ct, Bronx County 2024]).

Defendant's interpretation and application of the discovery statute, as illuminated by the arguments presented during discovery practice, turn discovery practice into "Law & Order meets Squid Games", a lopsidedly unfair contest that the legislature never intended to create (see People v Erby, 68 Misc 3d 625, 633 [Sup Ct, Bronx County 2020] ["As the legislative history of article 245 indicates, . . . the new discovery law, designed as it was to be remedial in nature, should not be construed as an inescapable trap for the diligent prosecutor who professionally, assiduously and in good faith attempts to comply"]; McCray, 2024 NY Slip Op 50760[U], *6 ["Neither the court's reading of CPL article 245, nor a review of its legislative history, reveals the State Legislature as having intended the discovery statute to serve as a prosecutorial obstacle course of Navy SEAL Hell Week proportions, where even the most minor of slip-ups, oversights, errors and delays are grounds for immediate CoC invalidation"]). A holistic review of the discovery practice as it unfolded here reveals—again, irrespective of intent—that the defense unreasonably weaponized CPL article 245. Upon weighing the prosecutor's conduct against defendant's violation of the duty of reasonableness during discovery practice, including an analysis of the defense demands presented in the CoC-invalidation motion, the court sees no objectively reasonable basis to conclude that the prosecutor acted with less than holistic due diligence and good faith (see People v Deas, 226 AD3d 823 [2d Dept 2024]).

IV. Conclusion

In light of the foregoing, the defense application to deem invalid the August 13, 2025, CoC is DENIED, and the CoC is DEEMED VALID. Based on the record before the court, any outstanding discoverable material would not be of such cumulative significance to render the invalidation of the CoC an appropriate outcome, especially upon due consideration given to the overall discovery practice as it unfolded here. The defense application to deem illusory the SoR served and filed alongside the CoC is DENIED also. The court, on its own motion, DEEMS VALID the People's November 24, 2025, SCoC, as well as the SoR that accompanied it. As sanction for the defense violation of the duty of reasonable use respecting the discovery statute, and as remedy for the resultant needless expenditure of prosecutorial time and energy, the court ORDERS that the adjournment periods for discovery compliance and conferencing, spanning June 24 — October 6, 2025, be DEEMED EXCLUDED for statutory speedy trial purposes (see CPL 245.80 [2]).

The People are reminded of their ongoing discovery, Brady and Giglio obligations (see CPL art 245; Giglio v United States, 405 US 150 [1972]; Brady v Maryland, 373 US 83 [1963]). The defense, too, is reminded of its discovery obligations (see CPL 245.10 [2]; 245.20 [4]; 245.50 [2]). The parties are placed on notice that if either "refuses to engage in CPL 245.35 (1) conferencing with the good-faith intention of reaching a reasonable accommodation over discovery disputes, despite the plain statutory expectation, then the court will have no choice but to be reasonable on that party's behalf" (McCray, 2024 NY Slip Op 50760[U], *2). In other words, all discovery shenanigans shall cease forthwith.

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

Dated: March 5, 2026
Bronx, New York
E. Deronn Bowen, A.J.S.C.

Footnotes

Footnote 1:The legal expectation of reasonableness expressed by the Court of Appeals in People v Bay (41 NY3d 200, 211-212 [2023]) is complemented by the ethical requirement that in all professional aspects a "lawyer shall act with reasonable diligence" (Rules of Prof Conduct [22 NYCRR 1200.0] rule 1.3; see post nn 4, 5 and accompanying text).

Footnote 2:Such an act or failure also violates the court's own rules "issued pursuant to this article" (CPL 245.80 [2]; see Rules of Part 17 [Sup Ct, Bronx County — Criminal Term] rule 4 [Discovery]).

Footnote 3:The duty of reasonableness also applies to both parties over "[r]eciprocal discovery for the prosecution" (CPL 245.20 [4]). As circumscribed by "constitutional limitations," the defense must act reasonably in "disclos[ing] to the prosecution . . . any material and relevant evidence within the defendant's or counsel for the defendant's possession or control that is discoverable" (id.). Reciprocal discovery demands by the People must be reasonable in purpose and scope, and circumscribed by the discovery statute's legislative intent.

Footnote 4:See ante n 1 and accompanying text.

Footnote 5:The New York State Bar Association comments that a "lawyer is not bound [ ] to press for every advantage that might be realized for a client. . . , [and] the lawyer should not use offensive tactics" (Rules of Prof Conduct [22 NYCRR 1200.0] rule 1.3 Comment [1] [NY St Bar Assn rev July 2025], available at
https://nycourts.gov/ad3/agc/rules/22NYCRR-Part-1200.pdf [last accessed March 5, 2026]).

The New York State Bar Association also comments that

"[d]ilatory practices bring the administration of justice into disrepute. Such tactics are prohibited if their only substantial purpose is to frustrate an opposing party's attempt to obtain rightful redress or repose. It is not a justification that such tactics are often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay or needless expense" (id., rule 3.2 Comment [1]).