People v Minor (2026 NY Slip Op 50255(U))

[*1]

People v Minor

2026 NY Slip Op 50255(U)

Decided on March 3, 2026

Criminal Court Of The City Of New York, New York County

Coleman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 3, 2026
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

againstKrystal Minor, Defendant.

CR-019107-25NY

Alvin L. Bragg, Jr., District Attorney, New York County (Julia Crosthwaite of counsel), for plaintiff. 
Twyla Carter, The Legal Aid Society, New York City (Nani Schroeder of counsel), for defendant.

Ilona B. Coleman, J.

In two motions, consolidated here for decision, the defense moves for various forms of relief.
First, the defense asks this court to find the People's certificate of compliance ("COC") invalid pursuant to CPL § 245.50 and, thereafter, to dismiss the case pursuant to CPL §§ 30.30 and 170.30 (1) (e). Specifically, the defense argues that the People's COC was invalid because they did not produce one body-worn camera ("BWC") video, calibration records for a portable breath test ("PBT") device, and potential impeachment materials prior to filing their COC. The People oppose, arguing that the motion is untimely under CPL § 245.50 (4) (c), that the potential impeachment materials are not discoverable, and that they exercised due diligence in satisfying their discovery obligations.
Second, the defense requests an order suppressing the results of a chemical breath test (VTL 1194 [2] [a]); suppressing the fruits of allegedly illegal searches and seizures (Mapp v Ohio, 367 US 643 [1961], Dunaway v New York, 442 US 200 [1978]); suppressing a noticed statement (People v Huntley, 15 NY2d [1965]); precluding and granting a voluntariness hearing regarding unnoticed statements; directing the People to comply with a request for a bill of particulars; directing supplemental discovery procedures; and precluding the People from introducing evidence of prior bad acts at trial. The People oppose.
I. Relevant Facts
The defendant was arrested on June 12, 2025 and arraigned on a misdemeanor information on June 13, 2025 charging her with violating VTL §§ 1192 (2), (3), and (1) as well [*2]as PL § 265.01 (1). She was released on her own recognizance, and the case was adjourned to August 4, 2025 for trial.
On August 4, 2025, the People were not ready for trial because they had not yet fulfilled their discovery obligations or filed a COC. The case was then adjourned to September 19, 2025, for trial and for the People to file a COC.
On September 4, 2025, the People filed a COC and a certificate of readiness ("COR").
On September 19, 2025, the People stated ready for trial. The defense informed the court (Judge E. Shamahs) that the originally assigned defense counsel would be leaving The Legal Aid Society at the end of the month and that the case would have to be reassigned internally. On that basis, defense counsel requested a good cause extension of their 35-day deadline to challenge the People's COC, which otherwise would have expired on October 9, 2025. The court granted the extension to November 3, 2025 and adjourned the case to that date.
On October 14, 2025, the newly assigned defense counsel emailed the People, informing them that the case was recently assigned to her and that she was reviewing the discovery. On October 24, 2025, defense counsel emailed the People, inquiring whether there was any BWC footage depicting the search of the defendant's car. On October 28, 2025, the defense requested an Internal Affairs Bureau ("IAB") log that had not been produced. The People responded that they did not have the IAB log because the matter was pending, and that the officer who would have the BWC footage was on vacation until November 3, 2025.
On November 3, 2025, newly assigned defense counsel appeared in court. She did not request any further extension of the deadline to challenge the People's COC. The People were not ready for trial because they needed to produce additional discovery and file and serve a supplemental COC ("SCOC"). The court adjourned the case to January 21, 2026 for trial. After the court appearance on November 3, 2025, the People produced the requested BWC footage and IAB log and filed and served a SCOC.
On November 5, 2025, defense counsel emailed the People requesting PBT calibration records. On November 6, 2025, the People produced the calibration records and filed and served a second SCOC.
On November 26, 2025, the defense filed the motions now before this court. On January 19, 2026, the People filed their opposition to the defense motions. On January 30, 2026, the defense filed a reply to the People's opposition.
II. COC Challenge
First, the defense moves pursuant to CPL § 245.50 for a determination that the People's September 4, 2025 COC was invalid. In opposition, the People argue that the motion is time-barred pursuant to CPL § 245.50 (4) (c), which requires that a motion challenging a COC be filed "within thirty-five days of the service of the [COC]." The defense asserts that the motion was timely because the defense "requested an extension on September 19, 2025 and it was approved by the Honorable Judge Shamahs" (aff of defense, p. 4). However, as the People point out — and as the transcript of the September 19, 2025 court appearance indicates — the court extended the deadline only to November 3, 2025. The uncontested facts therefore establish that the deadline to challenge the September 4, 2025 COC ran until November 3, 2025, and the defense did not file their COC challenge until November 26, 2025. In reply, the defense claims that the court has discretion to excuse the failure to meet the November 3, 2025 deadline. Specifically, the defense argues that they satisfied the statute when they requested an extension of the statutory 35-day deadline, and that the subsequent November 3, 2025 deadline is not [*3]governed by CPL § 245.50 (4) (c). Rather, the defense argues, it is a "judge created deadline," and this court therefore has the discretion to excuse the missed deadline (def memorandum in reply, p. 2).
Whether the court has discretion to entertain this late COC challenge under CPL § 245.50 (4) is a question of statutory interpretation.[FN1]
"The primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature" (People v Galindo, 38 NY3d 199, 203 [2022] [quoting Riley v County of Broome, 95 NY2d 455, 463 [2000]]), and "the best evidence of legislative intent" is "the plain meaning of the statutory text" (People v Cahill, 2 NY3d 14, 117 [2003]). Statutes must "be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent" (NY Statutes § 97). Courts should also consider "legislative history" and "the circumstances surrounding the statute's passage" in determining legislative intent (NY Statutes § 124). Once the legislature's intent is determined, "[a]ll parts of a statute must be harmonized with each other as well as with the general intent of the whole statute" (NY Statutes § 98).
Turning to the language of the statute, CPL § 245.50 (4) (c) provides that COC challenges "shall be addressed by motion within thirty-five days of the service of the certificate." The court may extend the 35-day limit "[u]pon request" and "for good cause shown," but the statute specifies that "[a] request for extension shall be made before the expiration of the thirty-five days" (CPL 245.50 [4] [c] [i] [emphasis added]). Such extensions are excluded from a speedy trial calculation except in cases of unreasonable prosecutorial delay or bad faith (id.). The statute also allows filing outside the 35-day period "where the grounds for such challenge are based upon a material change in circumstances, including but not limited to the belated disclosure of discoverable material," or "where the party entitled to disclosure could not, with due diligence, have known of the specific and particularized matters forming the basis of the challenge prior to the expiration of such period" (CPL 245.50 [4] [c] [ii]). Outside of these exceptions, the statute does not contain any language giving the court discretion to accept a COC challenge outside its specified time limits and exceptions (compare CPL 245.50 [4] [c] with CPL 255.20 [omnibus motions "shall be served or filed within forty-five days after arraignment . . . or within such additional time as the court may fix"] [emphasis added]).
The specificity of the newly amended CPL § 245.50 (4) (c) is especially notable in comparison with its predecessor statutes. When initially enacted in January 2020, Article 245 contained no procedural requirements at all for challenging COCs (CPL 245.50, as eff Jan 1, 2020). In May 2020, the legislature amended CPL § 245.50 specifying that challenges must be "by motion" (id. as amended L 2020, ch 56, pt HHH, § 7). Thereafter, the legislature amended CPL § 245.50 again in 2022. These amendments required the defense to notify the People of any "potential defect[s] or deficienc[ies]" in the COC "as soon as practicable," and also to file their COC challenges "as soon as practicable" (CPL 245.50 [4] [b], [c], as amended L 2022, ch 56, pt UU, subpt D, § 1). In the intervening years, trial courts have struggled to apply these rules with consistency. The legislature approved the current language of CPL § 245.50 (4) (c) in May 2025, and it went into effect on August 7, 2025.
Given this history and the statutory language, the legislature clearly intended to impose strict timeliness requirements for COC challenges that courts will apply uniformly. The statute [*4]sets a specific timeline and makes clear that the penalty for failure to comply with its timeliness provision is waiver of the COC challenge (see CPL 245.50 [4] [c]). It also eliminates the incentive for delay by excluding extensions from the speedy trial calculation (see CPL 245.50 [4] [c] [i]). Of course, the legislature did not wish to punish litigants who for excusable reasons cannot meet the 35-day deadline. Thus, the statute authorizes the court to extend the 35-day limit for good cause (CPL 245.50 [4] [c] [i]), and the 35-day limit does not apply in circumstances under which one could not have reasonably been expected to have raised the challenge within the timeframe (CPL 245.50 [4] [c] [ii]). However, the requirement that "[a] request for extension shall be made before the expiration of the thirty-five days" is clear and unequivocal (CPL 245.50 [4] [c] [i]), and it suggests that the legislature intended to curtail judicial discretion to excuse late filings. It is not hard to see how the exception could swallow the rule without this limitation. In almost every late filing, the defense could articulate a reason for the delay, and the attorney would argue that their client should not bear the cost of their mistake. Some courts might then grant such retroactive extensions as a matter of course, and before long the time limit would have little effect in those courts.
The interpretation of CPL § 245.50 (4) (c) that the defense puts forth is implausible as a matter of both text and legislative intent. The defense argues that the statute requires only that the initial request for an extension be made within the 35-day period, and then, once the initial good-cause extension is granted, any subsequent deadline can be altered or disregarded at the court's sole discretion. The statute, the defense argues, does not govern these "judge created deadlines" (def memorandum in reply, p. 2). There is no textual support for this distinction. The statute's provisions regarding extensions — that "the court may extend the time period to challenge a [COC] . . . for good cause shown," and that "[a] request for extension shall be made before the expiration" of the time period — apply with equal force to second or subsequent requests (see CPL 245.50 [4] [c] [i]). Similarly, it is implausible that the legislature would set such a strict rule governing the initial extension request and then allow the court unfettered discretion for all subsequent requests. If anything, one would expect that requests for second and third extensions should receive more scrutiny, not less.
Because this court may not retroactively extend the November 3, 2025 deadline for the defense's COC challenge, the motion is untimely unless one of the exceptions in CPL § 245.50 (4) (c) (ii) applies. Under that subdivision, the defense may file a COC challenge outside the 35-day time limit (1) "where the grounds for such challenge are based upon a material change in circumstances, including but not limited to the belated disclosure of discoverable material"; or (2) "where [the defense] could not, with due diligence, have known of the specific and particularized matters forming the basis of the challenge prior to the expiration of such period" (id.). The latter exception clearly does not apply here, and the defense does not claim otherwise. The former exception, however, requires closer analysis.
The "material change in circumstances" exception is ambiguous and, depending how the ambiguity is resolved, could authorize the filing of this motion outside the 35-day period. The statute permits late motions based on "a material change in circumstances, including but not limited to the belated disclosure of discoverable material" (CPL 245.50 [4] [c] [ii]). Read literally, the word "including" could mean that every "belated disclosure of discoverable material" is by definition a "material change in circumstances" within the meaning of the statute (see id.). This interpretation, however, would stretch the phrase "material change in circumstances" far beyond its usual meaning. Often, a belated disclosure will not provide any [*5]new information that is material to a COC challenge. When the defense is aware that a discoverable document is missing, the subsequent disclosure of the document contributes little, if anything, to their ability to mount a COC challenge.
Upon consideration of legislative intent and history, the ambiguity is easily resolved. Again, the purpose of statutory interpretation is to give effect to the legislature's intent. If it were the case that every belated disclosure of discovery constituted a material change in circumstances, the CPL § 245.50 (4) (c) (ii) exception would quickly swallow the rule. In almost every case in which the defense identifies missing discovery — and thus every case in which a COC challenge could be filed — the People make a belated disclosure. The 35-day time limit, then, would essentially never apply. This result is untenable, and the court must therefore resolve the ambiguity to avoid it. In fact, this precise concern was raised on the New York State Senate floor. Senator Anthony Palumbo noted that "what triggers [ ] these motions . . . is belated disclosure of discovery" and expressed his concern that the proposed language meant that "essentially of course [the defense] can make the motion at any time" (NY Senate, May 8, 2025, 2891:23-2892:1). The sponsor of the legislation, Senator Zellnor Myrie, replied that the language had been drafted to address potential situations in which "the prosecutor, even after conferral, said this particular batch of evidence was not available, and a couple of days later that somehow becomes available" (id., 2892:15-18). He explained further that the opportunity to file a COC challenge must be "based on a material change in the circumstance and not simply an exception to the rule that ends up swallowing the rule" (id., 2892:20-23). While cognizant that a single legislator's interpretation can diverge from the legislature's collective intent, the court finds Senator Myrie's statements to be compelling evidence of the legislative intent in this case. He spoke not as an individual member of the body, but as the sponsor and a drafter of the legislation. It is likely that other senators voted for the legislation believing his interpretation — including his assurances that the exception would not swallow the rule — to be authoritative.
The court therefore rejects the possibility that every belated disclosure of discoverable material will constitute a material change in circumstance under CPL § 245.50 (4) (c) (ii). To invoke the exception and file outside the 35-day time limit, the defense cannot merely show that the People belatedly produced discoverable material. Rather, they must demonstrate that the belated production (or other occurrence) constituted a material change in circumstances. Because the defense has not shown that the People's belated production of discoverable material constituted a material change in circumstances, this court cannot entertain defense's late motion under CPL § 245.50 (4) (c) (ii).
Under CPL § 245.50 (4) (c), a movant must either comply with the 35-day deadline, request an extension before the deadline has expired (CPL 245.50 [4] [c] [i]), or demonstrate that an exception applies (CPL 245.50 [4] [c] [ii]). Outside of that well-defined statutory framework, the court does not have the discretion to accept an untimely COC challenge. Because the defense did not meet the November 3, 2025 deadline, request a timely extension, or demonstrate that a CPL § 245.50 (4) (c) (ii) exception applies, the COC challenge is DENIED as untimely.
III. Motion to Dismiss Pursuant to CPL § 30.30
Because the COC challenge has been denied, the court finds that the People's September 4, 2025 COR was valid. The People are charged with 82 days of speedy trial time, from June 13, 2025, through September 4, 2025. As this does not exceed the 90 days within which the People were required to answer ready in this case, the motion to dismiss pursuant to CPL §§ 30.30 and 170.30 (1) (e) is DENIED.
IV. Outstanding Discovery Disputes
While this court is barred from considering the COC challenge, the People have a continuing duty to disclose discoverable materials, and the court has statutory authority to take such steps as are needed to facilitate compliance (CPL 245.35). Almost all of the alleged discovery violations raised in defense's COC challenge have been rectified, as the outstanding BWC footage, PBT records, and IAB log have been produced to the defense. The only remaining issues are the discoverability of (1) the attachments to the belatedly disclosed IAB log, and (2) a CCRB complaint against a testifying officer.
The parties' filings have not provided sufficient information for the court to determine the discoverability of these materials, and the court therefore makes the following order pursuant to CPL § 245.35. Specifically, the parties are directed to confer about the following issues:
• First, whether any attachments to the IAB log are discoverable pursuant to CPL § 245.20 (1) (k). The parties are specifically directed to consider the implications of the Court of Appeals' recent decision in People v Fuentes, — NE3d — (2025). In that case, the Court explained that an IAB log summarizing an allegation of misconduct made elsewhere — in that case, a federal lawsuit — did not itself carry impeachment value. Rather, it was the allegations themselves, written in the federal complaint, that carried impeachment value. Many IAB logs include as attachments emails or audio recordings that contain the complainant's allegations against the subject officer. Following Fuentes, this type of attachment is more clearly discoverable than the log itself.• Second, whether the People have any obligation to attempt to obtain the CCRB complaint. The parties are directed specifically to consider the CPL § 245.20 (2) provision stating that "[t]he prosecutor shall not be required to obtain material or information if it may be obtained with use of a subpoena duces tecum where the defense is able to obtain the same material with the use of a subpoena duces tecum."
After conferring, the parties are directed to submit a joint letter to the court briefly explaining any consensus reached and any ongoing disagreements. The parties should state in their letter (1) the nature of the allegations against the subject officers; (2) the findings, if any, reached by IAB or CCRB; (3) the titles and expected contents of any attachments; and (4) whether the People can obtain the CCRB materials at issue without the use of a subpoena duces tecum, and whether those means are also available to the defense.
The parties are directed to confer and submit their joint letter within three weeks of the date of this order.
V. Omnibus Motion
First, the motion to suppress is GRANTED to the extent that a combined Mapp/Huntleyi>/Dunaway and VTL § 1194 hearing will be conducted before trial. The parties' allegations create factual disputes that must be resolved at an evidentiary hearing (see CPL 710.60 [4]).
Second, the motion for preclusion and a voluntariness hearing regarding unnoticed statements is DENIED as the defense has not challenged any such statement (see CPL 710.60 [3]; CPL 710.20). The People are directed to notify the defendant as soon as practicable upon deciding to use any unnoticed statement for impeachment or rebuttal purposes, and the defendant is granted leave to renew their motion to suppress upon receiving such notification (see CPL 710.40 [2], [4]).
Third, the motion for a bill of particulars is DENIED. The People filed a bill of particulars as part of their automatic disclosure form. That document and the accusatory instrument contain all the information the defense has demanded that is authorized in a bill of particulars (CPL 200.95 [5]).
Fourth, the motion for a supplemental discovery order is DENIED. The court has addressed the outstanding discovery disputes above. Of course, the People have a continuing duty to disclose and are required as a matter of due process to investigate and turn over all materials favorable to the defense, especially where the defense has made a specific request (CPL 245.60, People v Vilardi, 76 NY2d 67, 77 [1990]). The defendant, however, has not demonstrated that court intervention beyond the order in section IV of this decision is necessary to ensure the People's compliance with those obligations.
Finally, the motion to preclude evidence of prior bad acts is referred to the trial court. The People are directed to provide supplemental discovery to the defense as soon as practicable and at least fifteen calendar days prior to the first scheduled trial date (CPL 245.20 [3]; CPL 245.10 [1] [b]).
This constitutes the decision and order of the court.
Dated: March 3, 2026New York, NYIlona B. Coleman, J.C.C.

Footnotes

Footnote 1:There do not appear to be any published court decisions addressing this issue.