People v Ortiz (2026 NY Slip Op 50380(U))

[*1]

People v Ortiz

2026 NY Slip Op 50380(U) [88 Misc 3d 1239(A)]

Decided on March 20, 2026

Criminal Court Of The City Of New York, New York County

Shamahs, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on March 20, 2026
Criminal Court of the City of New York, New York County

The People of the
State of New York, Plaintiff,

againstJai Ortiz, Defendant.

CR-033463-25NY

For Defendant: Twyla Carter, The Legal Aid Society (Tucker Higgins, Esq. of
Counsel)For the People: Alvin Bragg, New York County District Attorney's Office
(Megan Vecere, Esq. of Counsel)

Elizabeth Y. Shamahs, J.

On October 26, 2025, at approximately 5:30 PM, inside of 1127 Avenue, New York, New
York, defendant, Jai Ortiz, removed several pairs of leggings from the displays at Lululemon and
placed them in his jacket and backpack before bypassing the final points of sale without paying,
and without permission or authority to do so.
For these acts, defendant was arrested and arraigned in New York City Criminal Court with
one count of Petit Larceny (Penal Law [PL] §155.25) and one count of Criminal Possession
of Stolen Property in the Fifth Degree (PL § 165.40).
Thereafter, the People began obtaining discovery. The assigned prosecutor reached out to
coordinate with several different departments and liaisons within the New York County District
Attorney's Office that have been established to streamline communication and effectuate
obtaining discovery from law enforcement agencies, such as a Body Worn Camera (BWC) Unit,
a Law Enforcement Disclosure (LED) Unit, and a Litigation Support Unit (LSU). From agencies,
the People obtained and disclosed numerous pieces of discovery with defense counsel, before
filing and serving a Certificate of Compliance (COC) and Statement of Readiness (SOR) with
defense counsel and the Court, on December 1, 2025. The disclosures consisted of activity logs
for all testifying witnesses, NYPD arrest paperwork, complaint reports, civilian witness contact
information, prisoner holding pen roster, prisoner movement slip, pedigree card, photographs,
911 calls, radio runs, vouchers, BWC videos, law enforcement witness information including
NYPD Internal Affairs Bureau (IAB) paperwork and Civilian Complaint Review Board (CCRB)
paperwork, miscellaneous items, and more.
On December 16, 2025, defense counsel notified the prosecutor of purportedly missing [*2]discovery. Namely, (1) codefendant records such as dispositions
and statements, (2) a list of tangible objects in defendant's possession, (3) civilian information,
(4) vehicle information, (5) dashcam footage, (6) BWC video and activity log for an officer, (7)
that he was requesting to inspect the police vehicle including the windows used in this case, (8)
text messages and email communications for officers and witnesses, (9) records of complaints
and investigations pertaining to thefts for other cases at Lululemon and another athletic wear
store, (10) a trespass notice, and (11) an explanation for redactions.
On December 22, 2025, the prosecutor responded that, (1) codefendant materials were
inadvertently not disclosed and that it was being turned over, (2) the stolen items were not
vouchered and were given back to Lululemon and that a list of stolen property had been
disclosed, (3) the requested civilian information for a Lululemon external specialist was being
disclosed, (4) the request for vehicle information was overbroad and vague, (5) there was no
dashcam footage, (6) the request to examine the police vehicle lacked any legal authority that
would permit such an inspection, and that the car window would have changed in the time
passed, (7) Officer Ibrahim's BWC video was being disclosed and that they did not have to
disclose disciplinary information as he was not testifying, (8) text messages were requested, (9)
they were not required to disclose or investigate complaints and other reports of other crimes at
Lululemon or similar athletic wear stores, (10) the trespass notice was requested, and (11)
non-discoverable information was redacted.
On December 30, 2025, defense counsel further reiterated their previous requests and,
inter alia, (1) requested information and materials related to DA and NYPD practices as
to preserving evidence pursuant to Criminal Procedure Law (CPL) 450.10, (2) steps the
prosecutor took to ensure that the stolen property was released pursuant to 450.10, (3) records
and communications regarding the stolen property's release, (4) tangible and intangible records
and information about how Lululemon requested the return of the stolen goods, and (5) names
and dates for officers involved in the property release.
Now, in papers dated January 27, 2026, defendant, through counsel, moves this Court for an
Order deeming the People's COC invalid and their SOR illusory on the ground that certain
discoverable information was belatedly disclosed or undisclosed, and dismissing the information
pursuant to speedy trial. Defendant specifically asserts that the People failed to provide him with
an opportunity to inspect the Lululemon leggings, a list of tangible objects recovered from
defendant, an opportunity to inspect and test the window of a police vehicle, records and
information of other arrests and criminal activity at Lululemon and similar athletic wear stores,
and codefendant information. Defendant additionally contends that the People have failed to
supply him with materials he needs to support a potential motion for sanctions including
organizational practice records, records of communications, and property related records.
Defendant also takes issue with belatedly disclosed law enforcement officer witness disciplinary
information as to a police officer, witness contact information, trespass notice, codefendant
information, and BWC videos as to a police officer. The People oppose in papers dated February
13, 2026. Defendant filed reply papers on February 20, 2026.
As recently amended, effective August 7, 2025, article 245 of the Criminal Procedure Law
(CPL) requires the People to disclose to a defendant "material and information in the possession,
custody or control of the prosecution or under the prosecution's direction and control," and
provides a non-exhaustive list of materials subject to "automatic" disclosure. CPL §
245.20(1). Under CPL § 245.20(2), the People are required to "make a diligent, good faith
[*3]effort to ascertain the existence of material or information
discoverable under [CPL § 245.20(1)] and to cause such material or information to be made
available for discovery where it exists but is not within the prosecutor's possession, custody or
control." The People are not required, however, "to obtain material or information if it may be
obtained with the use of a subpoena duces tecum where the defense is able to obtain the same
material with the use of a subpoena duces tecum." CPL § 245.20(2).
The People must also certify their discovery compliance in writing by filing a COC.
Importantly, the People may file their COC even if they have not yet disclosed all automatically
discoverable items provided that they have "exercised due diligence and acted in good faith in
making reasonable inquiries and efforts to obtain and provide the discovery required by [CPL
§ 245.20(1)]." CPL§ 245.50(1). The COC must "state that, after exercising due
diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and
disclose material and information subject to discovery, the prosecution has disclosed and made
available all known material and information it has obtained subject to discovery." CPL §
245.50(1) (emphasis added). The COC must also identify "the items provided" and "the items
that the prosecution is required to disclose and of which the prosecution is aware but has been
unable to obtain despite the exercise of due diligence as evaluated under this section." CPL
§ 245.50(1). If the People provide additional discovery in connection with their ongoing
obligations outlined in CPL § 245.60, they must file "a supplemental certificate" that
"identif[ies] the additional material and information provided." CPL §245.50(1). A SCOC
will not impact the validity of the original COC if filed in good faith and after exercising due
diligence or when the additional discovery did not exist when the initial COC was filed. CPL
§245.50(1-a).
Once the People file a COC, a defendant must notify the People of any potential deficiencies
in the COC by making "good faith efforts to confer with the [prosecution] regarding the specific
and particularized matters" regarding the allegedly missing discovery. Then, if "no
accommodation can be reached," the defense may file a motion to invalidate the People's COC
provided that: (1) they do so within thirty-five days of the service of the People's COC; and (2)
they file an accompanying affirmation of conferral stating that the defense "conferred in good
faith or timely made good faith efforts to confer with the [prosecution] regarding the specific and
particularized matters forming the basis for such challenge, that efforts to obtain the missing
discovery from the [prosecution] or otherwise resolve the issues raised were unsuccessful, and
that no accommodation could be reached." CPL § 245.50(4)(b)-(c). Significantly, the statute
further specifies that "the court may grant a remedy or sanction for a discovery violation as
provided in [CPL § 245.80]." CPL § 245.50(1). Any such remedy or sanction must be
"appropriate and proportionate to the prejudice suffered by the party entitled to disclosure." CPL
§245.80(1).
To determine the validity of the People's COC, a reviewing court must assess the People's
due diligence. As the Court of Appeals held in People v Bay, 41 NY3d 200 (2023), due diligence is a "flexible
standard that requires the People to make reasonable efforts to comply with statutory directives."
Bay, 41 NY3d at 211 (internal quotation marks omitted). "Reasonableness, then, is the
touchstone—a concept confirmed by the statutory directive to make 'reasonable inquiries.'"
Id. at 211-12. Moreover, the Court recognized that, "[a]lthough the relevant factors for
assessing due diligence may vary from case to case, courts should generally consider, among
other things:" (1) "the efforts made by the prosecution and the prosecutor's office to comply with
the statutory requirements;" (2) "the volume of discovery provided and [*4]outstanding;" (3) "the complexity of the case;" (4) "how obvious
any missing material would likely have been to a prosecutor exercising due diligence;" (5) "the
explanation for any discovery lapse;" and (6) "the People's response when apprised of any
missing discovery." Id. at 212. These six factors are now part of the statutory
due-diligence analysis under CPL § 245.50(5)(a). This section also requires courts to
consider whether: (1) "the belated discovery was substantively duplicative, insignificant, or easily
remedied;" (2) "the omission was corrected;" (3) "the prosecution self-reported the error and took
prompt remedial action without court intervention;" and (4) "whether the prosecution's delayed
disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability
to effectively investigate the case or prepare for trial." CPL § 245.50(5)(a). A reviewing
court must "look at the totality of the party's efforts to comply with the provisions of [article
245], rather than assess the party's efforts item by item." CPL § 245.50(5). The statute
further directs that "[t]he court's determination shall be based on consideration of all factors
listed in [245.50(5)(a)] and no one factor shall be determinative." CPL § 245.50(5)(b).
Indeed, the Bay decision made clear that, in assessing the validity of a COC, the
reviewing court should engage in a "holistic assessment of the People's efforts to comply with the
automatic discovery provisions, rather than a strict item-by-item test that would require [a court]
to conclude that a COC is improper if the People miss even one item of discovery." People v Cooperman, 225 AD3d
1216, 1220 (4th Dept 2024); see
also People v Williams, 224 AD3d 998, 1006-07 (3d Dept 2024) (People's COC was
valid even though three discoverable items had not been disclosed where People provided
"extensive" discovery before filing COC, identified missing items when they filed the COC, and
acknowledged their duty to provide missing items upon receipt). Notably, "[a]rticle 245 is not
intended for use as a 'sword,' whereby [ADAs] are expected to run themselves ragged in at times
futile or near-futile attempts to procure material in which defense counsel has no substantive
interest beyond exhausting the People's statutory speedy trial time or hoping that the People, in
frustration, opt to abandon the prosecution." People v Barrios, 82 Misc 3d 606, 613 (Crim Ct Bronx Co 2024);
see also People v Thompson, 79
Misc 3d 1220(A), *2 (Crim Ct Kings Co 2023) (article 245 "does not require the impossible;
it does not demand that every scrap of discoverable information be turned over before the People
may file a [COC]") (internal quotation marks omitted).
Furthermore, certain delays or discovery issues should not invalidate a COC that was made
in good faith, after the exercise of due diligence and efforts made by the prosecution to comply
with statutory obligations. Bay at 210-213. If the delay is a result of oversights in the
production of material, delayed discovery of the existence of certain items, a good faith position
that the material in question was not discoverable, or voluminous files, the Bay decision
clearly posits that a court should apply a "holistic assessment" of the efforts made by the People
to comply with their discovery obligations when evaluating the validity of a COC. Id.
Moreover, several courts have found that certain delays or discovery issues should not invalidate
a COC that was made in good faith, after the exercise of due diligence, and where, for example,
the delay was a result of oversights in the production of material, delayed discovery of the
existence of certain items, voluminous discovery, non-existent items, or material unrelated to the
case. People v Cano, 71 Misc 3d
728 (Sup Ct, Queens County 2020); People v Lustig, 68 Misc 3d 234 (Sup Ct, Queens County 2020)
(Zayas, J)(court found the People's certificate of compliance to be valid, since it was clearly filed
in good faith under CPL § 245.50(1) and, therefore, no adverse consequence to the
prosecution should result from the fact that the certificate was filed prior to [*5]the disclosure of the database search results).
As an initial matter, defendant's motion was filed after the expiration of the 35-day time limit
to challenge the People's COC, as he even acknowledges. See CPL § 245.50 (4)(c).
He argues that his motion was nevertheless timely because there was a material change in
circumstances. Namely, he received belated discovery which prompted his additional discovery
requests that he could not have known about prior. The People do not contest the timeliness of
defendant's motion. As initially noted, CPL § 245.50 (4)(c) provides that COC challenges
"shall be addressed by motion within thirty-five days of the service of the certificate." The court
may extend the 35-day limit "[u]pon request" and "for good cause shown," but the statute
specifies that "[a] request for extension shall be made before the expiration of the thirty-five
days" (CPL §245.50 [4][c][i]). Such extensions are excluded from a speedy trial calculation
except in cases of unreasonable prosecutorial delay or bad faith (id.). The statute also
allows filing outside the 35-day period "where the grounds for such challenge are based upon a
material change in circumstances, including but not limited to the belated disclosure of
discoverable material," or "where the party entitled to disclosure could not, with due diligence,
have known of the specific and particularized matters forming the basis of the challenge prior to
the expiration of such period" (CPL 245.50 § [4][c][ii]). 
Here, the People may not take issue with defendant's untimely motion, but this Court does.
"[T]he legislature clearly intended to impose strict timeliness requirements for COC challenges
that courts will apply uniformly. The statute sets a specific timeline and makes clear that the
penalty for failure to comply with its timeliness provision is waiver of the COC challenge."
People v Minor, 2026 NY Slip Op 50255(U) (Crim Ct NY Co 2026) (Coleman, J).
Moreover, defendant failed to request any extension of time to file at all, let alone one before the
expiration of the 35-day time limit — as he must. CPL § 245.50(4)(c)(i); People v
Minor, 2026 NY Slip Op 50255(U) (Crim Ct NY Co 2026) (Coleman, J). Nor is this Court
persuaded by defendant's argument that one of the good cause exceptions contained in CPL
§ 245.50 (4) (c)(ii) applies. As to belated discovery, "the defense cannot merely show that
the People belatedly produced discoverable material. Rather, they must demonstrate that the
belated production (or other occurrence) constituted a material change in circumstances"
(Minor, supra), which he has failed to do here. Likewise, contrary to defendant's
suggestion, the record demonstrates that counsel was aware of his claimed missing discovery
well before receiving any belated discovery. Indeed, "[w]hen the defense is aware that a
discoverable document is missing, the subsequent disclosure of the document contributes little, if
anything, to their ability to mount a COC challenge." Minor, supra. For these reasons,
defendant's motion to dismiss is denied as untimely.
In any event, defendant's untimely motion is devoid of merit. His laundry list of Sisyphean
demands are unreasonably overbroad, illogical, and impossible for even the most diligent and
competent to perform. "These requests are not tailored to an identifiable factual dispute, testing
irregularity or theory of impeachment, but instead seek expansive categories of institutional
records and system-level metadata unconnected to a reasonable issue in this case." People v
Bennett, 2026 NY Slip Op 50284(U) (Sup Ct, Bronx Co 2026). Indeed, addressing some of
defendant's outlandish claims, defendant's claim that he is entitled to inspect police vehicles
months after the incident is meritless and goes far beyond the reach of the statute, which allows
for the testing of tangible evidence, not NYPD vehicles. Defendant is not entitled to records and
files of other crimes of thefts from Lululemon or from similar stores. Defendant is also not
entitled to organizational practice records and communications, especially for his cited [*6]reason of enhancing any potential motion for sanctions. Relatedly,
defendant's claims regarding CPL § 450.10 are also wrong. As the People correctly point
out, the property was returned to Lululemon contemporaneously to the theft and without being
vouchered. Thus, this does not fall in the ambit of CPL § 450.10. See Matter of
Morgenthau v Marks, 177 AD2d 131 (1st Dept 1992) (a police officer who momentarily
examined the complainant's wallet, which had been retrieved from the thief, did not have custody
of that wallet within the meaning of this statute, and the wallet was accordingly not subject to the
terms of this statute).
Defendant's demands to the prosecutor are misguided, at best, and repeated attempts to annoy
and frustrate the prosecution with the hopes of obtaining a speedy trial dismissal, at worst. In
either case, the defense "unreasonably weaponized" the discovery statute far beyond its
legislatively intended purpose. People v Lambert, 2026 NY Slip Op 50259(U) (Sup Ct
Bronx Co 2026). "Defendant's interpretation and application of the discovery statute, as
illuminated by the arguments presented turn discovery practice into "Law & Order
meets Squid Games", a lopsidedly unfair contest that the legislature never intended to
create." Id.
Indeed, defendant "incorrectly conflates the People's obligations — clearly set forth by
the Legislature — to disclose [statutory materials] with an obligation to go on a wild goose
chase for [material] that may exist somewhere — or that may not". People v Edwards, 77 Misc 3d 740
(Crim Ct Bronx Co 2022). As outlined above, Article 245 of the CPL is not intended to be used
as a sword and ADAs do not have to "run themselves ragged" to obtain futile or near futile pieces
of discovery that defense counsel has "no substantive interest beyond exhausting the People's
statutory speedy trial time or hoping that the People, in frustration, opt to abandon the
prosecution." People v Barrios, 82
Misc 3d 606, 613 (Crim Ct Bronx Co 2024). Defense counsels cannot send the prosecutor
on endless hunting campaigns into the wilderness in search of a mythical golden goose and when
the prosecutor has weariedly returned from their arduous expedition — either clutching the
mythical golden goose in tow, or more likely confirming its nonexistence — he cannot
turn around having now expended statutory speedy trial time by exclaiming, "Gotcha! 30.30!"
while reaping the windfall of dismissal. To hold otherwise would be to "countenance a defendant
to ha[ve] their cake and eat it too." People v Tarsia, 50 NY2d 1, 8-9 (1980). Litigation is
not a game and "discovery is not meant to be a game of 'gotcha' with the prosecution" People
v Ferrer, NY Slip Op 50706(U) (Crim Ct Bx Co 2021). Defense counsel is fully capable of
self-monitoring during discovery practice so as to not run afoul of the statutory duty of
reasonableness, and is expected to do so. Lambert, supra. "Viewing the defense demands
from a macro-case management perspective, the court cannot imagine any prosecutor objectively
reasonably being able to invest the time and energy necessary to satisfy, on each and every
assigned case, the volume and diversity of hyperspecific discovery demands that defendant
imagines CPL article 245 to permit, as well as to conference over all individual disputes as
statutorily required." Id.
The mere fact that the prosecutor then entertained defendant's numerous requests for
additional discovery — even those they do not believe to be discoverable and those of
minimal importance — only demonstrates their seriousness in prosecuting the case and in
complying with their discovery obligations and does not detract from an initial COC's validity,
even when supplemental COCs are subsequently filed. In any event, furthermore, a holistic
review and assessment of the People's disclosures, COC, papers, and the court file demonstrates
that their initial disclosures were substantial and extensive, especially in comparison to the few
items defendant takes issue with, and the People's belated disclosures were reasonable under the
[*7]circumstances. Defendant, also, remains entirely
unprejudiced. 
In addition, the New York County District Attorney's Office has made considerable and
laudable efforts to facilitate discovery compliance, such as a creating BWC, LED, and LSU units
and assigning paralegals and support staff to obtain discovery. And contrary to defendant's
contention, "[t]he creation of these additional units and allocation of resources to generally
address their discovery obligations under CPL Article 245 support a finding of due diligence on
the part of the [New York] County District Attorney's Office in fulfillment of their discovery
obligation in this case." People v
Antunez, 86 Misc 3d 1265(A), *5 (Sup Ct Queens Co 2025) (Yavinsky, J). Taken
together, this all demonstrates that the People's initial COC, made in good faith and after
exercising due diligence, was valid.
Accordingly, for the reasons discussed above, defendant's motion is denied as untimely and
meritless. This Court further declines to address the parties' remaining contentions and in light of
this determination, the Court need not reach defendant's speedy trial claim.
The foregoing constitutes the Opinion, Decision, and Order of the Court.
Dated: March 20, 2026New York, New YorkELIZABETH Y.
SHAMAHS, J.C.C.